# EXHIBIT A

**COURT-AUTHORIZED NOTICE OF YOUR RIGHT TO "OPT-IN" TO CLAIMS BROUGHT UNDER THE FLSA AGAINST THE GOLD ROOM**

<u>Campbell v. Marshall International LLC dba The Gold Room, et al.</u>
U.S. DIST. CT., NORTHERN DIST. OF ILLINOIS, C.A. NO. 20-cv-05321

[DATE], 2021

Dear current or former dancer at the Gold Room:

Enclosed is a consent form allowing you to "opt-in" to participate in a case that has been filed on behalf of dancers at the Gold Room. This case has been brought on behalf of anyone who has worked as a dancer for the Gold Room in Stone Park, Illinois during the last three years. **This is a court-authorized notice.**

According to the company's records, you may be eligible to participate in this case because you have worked as a dancer at the Gold Room during the last three years. In order to participate in the case, and obtain a portion of any judgment or settlement that may be entered in the dancers' favor, you must complete and return this consent form to the address below by **no later than [DATE], 2021.**

In this lawsuit, the plaintiff alleges that the Gold Room violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., because it misclassified its dancers as independent contractors instead of employees, and as a result, has not paid dancers an hourly wage while requiring dancers to pay improper fees to the club.

The Gold Room denies that it has violated the FLSA. It contends that dancers are properly classified as independent contractors rather than employees and need not be paid hourly wages under the FLSA, and that all house fees paid are lawful.

Although the Gold Room disputes the merits of this case, the Gold Room has given its assurance that you will not be subject to retaliation of any kind by choosing to participate in this case, and you will not be discharged or subject to discrimination in any manner if you choose to exercise your rights under the FLSA.

The case is in an early stage, and there has not been a decision by the court as to whether the plaintiffs' position or the company's position is the correct one. There has also not been any settlement reached. If you do not return the enclosed consent form by **[DATE], 2021,** you will not be considered part of this case and will be unable to receive a share of any settlement or judgment that the plaintiffs may obtain. If you do participate in the case, you will be bound by any ruling entered by the court or settlement reached by the parties.

The plaintiff who initiated this case will work with us to make decisions regarding the progress of this litigation, and we welcome your input as well into those decisions.

You may also be asked to be a witness or to provide evidence in the case, although not all employees who submit a consent form will be required to do so.

**Again, to join this case, you must return the enclosed "opt-in" consent form to Lichten & Liss-Riordan at the address listed below or by emailing the form to claims@llrlaw.com no later than [DATE].** In the meantime, if you have any questions, do not hesitate to contact us at the phone number or e-mails provided below:

> Bradley Manewith
> SIEGEL & DOLAN LTD.
> 150 North Wacker Drive, Suite 3000
> Chicago, IL 60606
> Tel. (312) 878-3210
> bmanewith@msiegellaw.com
>
> Adelaide Pagano
> LICHTEN & LISS-RIORDAN, P.C.
> 729 Boylston Street, Suite 2000
> Boston, MA 02116
> (617) 994-5800
> apagano@llrlaw.com
> www.llrlaw.com
> claims@llrlaw.com

**This notice has been authorized by the United States District Court.** Please do not contact the court; you may contact the counsel listed above with any question you have.

> Yours truly,
>
>
> Adelaide Pagano

# EXHIBIT B

**OPT-IN CONSENT FORM TO PARTICIPATE IN FLSA WAGE CASE ON BEHALF OF EXOTIC DANCERS AGAINST THE GOLD ROOM:**

***Campbell v. Marshall International LLC dba The Gold Room, et al.*,**
**U.S. Dist. Ct., Northern District of Illinois, C.A. No. 20-cv-05321**

Complete and return to:	Adelaide Pagano
	Lichten & Liss-Riordan, P.C.
	729 Boylston Street, Suite 2000
	Boston, MA 02116
	www.llrlaw.com
	Tel: (617) 994-5800
	Fax: (617) 994-5801
	Email: claims@llrlaw.com

Name: _____

Address: _____

City_____ State_____ Zip_____

Telephone: _____ [home] _____ [cell]

E-Mail: _____

**CONSENT TO JOIN COLLECTIVE ACTION**
Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)

1.	I consent and agree to pursue my federal wage claims arising out of the work I performed as an exotic dancer at the Gold Room.

2.	I worked as an exotic dancer at the Gold Room from approximately (list month & year) _____ until _____.

3.	During that time, I was not paid an hourly wage and was required to pay fees in order to work.

4.	I understand that I will be joining a lawsuit to bring a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. I hereby consent, agree, and "opt in" to become a plaintiff herein and to be bound by any judgment by the court or any settlement of this action. I hereby designate Adelaide Pagano of Lichten & Liss-Riordan, P.C., 729 Boylston Street, Suite 2000, Boston, MA 02116, and Bradley Manewith of Siegel & Dolan Ltd., 150 North Wacker Drive, Suite 3000, Chicago, IL 60606, to represent me for all purposes in this action.


Signature: _____	Date: _____

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDI CAMPBELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARSHALL INTERNATIONAL, LLC D/B/A GOLD CLUB CHICAGO A/K/A THE GOLD ROOM AND PERA M. ODISHOO,<br><br>Defendants. | CASE NO. 20-CV-05321<br><br>Hon. Elaine E. Bucklo |

**DECLARATION OF BRANDI CAMPBELL**

1. My name is Brandi Campbell. I am currently an adult resident of Champaign, IL. I am a named plaintiff in the above-referenced case.

2. My statements in this Declaration are based on my own personal knowledge.

3. From June 2017 until approximately November 2018, I worked as an exotic dancer for the Gold Room, located at 3815 West Lake Street in Stone Park, Illinois.

4. The Gold Room classified me and the other dancers as independent contractors, even though the managers at the club exercised control over our work in many ways.

5. During my time at the Gold Room, there would be approximately 50 or more dancers working on a Friday or Saturday night and generally fewer than 50 dancers working on a weeknight, though there were sometimes more and sometimes less. I estimate

1

that in total, there were likely several hundred dancers working there at the time I was there in 2017 and 2018.

6. The Gold Room required dancers to pay a house fee for every shift that we worked. The fee was approximately $20 per shift if I arrived before approximately 6 pm, but if I arrived later, the fee would be higher and sometimes as much as $50. If business was very slow, the manager would sometimes exercise his discretion to lower or waive the house fee.

7. The club exercised control over various aspects of my work. For example, the club determined how much could be charged for a private dance. The club set the price of a private dance at about $30, but it also mandated that Thursdays were discounted nights and that private dances were only about $10 on Thursdays. I was required to pay about $2 per private dance to the club (except on Thursdays). I did not have discretion about what I could charge for private dances and had to follow the pricing and any discounts established by the club.

8. Likewise, the club established the prices for time spent in the VIP room and they had rules governing our conduct in the VIP Room. For instance, when a customer ordered champagne, we were required to accept a glass (although we could covertly request non-alcoholic champagne). When customers paid for the VIP Room with a credit card, we would be paid in funny money, and we would have to exchange it for real currency at the end of the night when we checked out with the manager. We only received a percentage of the value of the funny money from the manager.

9. The club also instituted theme nights and required dancers to participate. For example, the club had a Circus theme night. The club required me and the other

dancers to purchase special carnival-themed clothing that was red and white or striped to wear that evening at our own expense. We also had to wear heels at all times while working. Additionally, every hour or so on Friday and Saturday nights, starting around 10 pm, all of the dancers would have to line up in the dressing room and walk out onto the stage and then down to the main show floor where we would have to sell two-for-one dances at prices established by the club. If we did not want to participate, we had no choice but to stay out on the main floor and were prevented from returning to the dressing room. We were also required to hand out cards to customers that said "Come see me" and had a place for us to write in when we would be working at the club so the customers could seek us out. We were also given other promotional materials and fliers to hand out to customers for theme nights or other events they were promoting. If the club decided to screen UFC fights or other events, it would temporarily close the stage, and dancers were not allowed to dance on stage at that time.

10. I was told by management that I could not collect money from customers before providing a dance and that I had to wait until after the dance to take the money. This rule sometimes created problems for me if a customer refused to pay me after already receiving the dance, which is why I prefer to receive payment first.

11. The club also had a special invite-only area roped off in one section of the club for particularly wealthy or important customers, and dancers were not allowed back there unless specifically invited. If a dancer attempted to access this area without an invitation, she could be disciplined or fired.

3

12. The Gold Room required me and the other exotic dancers to be part of a stage rotation. During our shifts, we were required to go onto the stage to dance for at least two songs per rotation. The club required that we begin the first song fully clothed and remove our dress by the second song.
13. Dancers had to work at least once every 60 days, or they would have to reaudition for management before being allowed back.
14. Dancers could not leave the club without permission. In order to leave at the end of a shift, a dancer had to secure a checkout slip from the manager, which she then had to take to take to get signed by the DJ, bouncer, and house mom. Dancers were required to tip out the DJ and the house mom $15 each per shift. If we did not pay these tip outs, then the DJ, and house mom would not sign-off on our checkout slip, and we could not leave for the night. We also had to pay the bouncer $2 per private dance. It was "optional" to pay an additional tip-out to the bouncer, however, he expected a tip.
15. The only compensation that the exotic dancers received was in the form of gratuities paid by customers. We did not receive any hourly wage from the Gold Room.

I swear that the foregoing is true and accurate under the pains and penalties of perjury.

This 10th day of August, 2021

*Brandi Elizabeth Campbell*
_____
Brandi Campbell

4