```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| Brandi Campbell, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>Marshall International, LLC d/b/a Gold Club Chicago a/k/a the Gold Room, and Pera M. Odishoo,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 20 C 5321<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## Memorandum Opinion & Order

Plaintiff Brandi Campbell formerly worked as an exotic dancer for defendant Gold Club Chicago a/k/a the Gold Room (the "Club"), managed at the time of suit by defendant Pera M. Odishoo. She alleges that she was not paid as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), because she was misclassified as an independent contractor. Plaintiff seeks to represent all similarly situated individuals in a collective action under the FLSA as well as in a class action under Illinois state law.

Before me is plaintiff's motion for conditional class certification and notice to putative class members pursuant to § 216(b) of the FLSA. Plaintiff seeks to include in the action

"all individuals who have worked as exotic dancers for the [Club] in Stone Park, Illinois, between three years prior to the filing of this Motion and the entry of judgment in this case." Dkt. No. 17 at 12. As required by *Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020), I gave defendants an opportunity to submit evidence showing the existence of a valid arbitration agreement for each employee they seek to exclude from receiving notice. Dkt. No. 38. I have jurisdiction over the FLSA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). For the following reasons, plaintiff's motion is granted in part.

I.

The FLSA authorizes employees to bring their FLSA claims in a collective action on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). Because the statute does not specify collective action procedures, district courts have "wide discretion to manage collective actions." *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)). Courts in this district routinely employ a "two-step process" to decide whether a FLSA suit should proceed as a collective action. *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008).

The first step is conditional certification, "a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their

eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). At the conditional certification stage, plaintiff need only make a "modest factual showing" to demonstrate that she and other potential claimants "were victims of a common policy or plan that violated the law." *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) (citation and internal quotation marks omitted). Plaintiff can satisfy this standard by offering "some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Lieberman v. Altounion Constr., Inc.*, No. 19-cv-0910, 2019 WL 6467321, at *2 (N.D. Ill. Dec. 2, 2019) (citations omitted).

In a sworn declaration, plaintiff claims that she and other dancers were misclassified as independent contractors even though defendants exercised substantial control over their work. Dkt. No. 17-1 at 7 ¶ 4. For example, plaintiff alleges that defendants determined: how much could be charged for a private dance and for time spent in the VIP room, *id.* at 8 ¶¶ 7-8; rules governing the dancers' conduct in the VIP room, *id.*; what dancers were required to wear on certain theme nights, *id.* at 8-9 ¶ 9; when and how often dancers were required to be on stage, *id.* at 10 ¶ 12; when dancers could leave the Club, *id.* ¶ 14; and various other aspects of how

3

the dancers carried out their work, see id. at 9-10 ¶¶ 10-11, 13. Despite this alleged control, plaintiff and the other dancers did not receive an hourly wage, but instead received all their pay in the form of customer tips. Id. at 10 ¶ 15. From this compensation, plaintiff and other dancers were required to pay house fees to defendants for every shift that they worked. Id. at 8 ¶ 6. This sworn declaration makes the requisite minimal factual showing that plaintiff and similarly situated individuals were subjected to a common practice in violation of the FLSA.

Defendants do not oppose this evidence and the cases they cite are distinguishable from this one. In those cases, courts denied conditional certification because plaintiffs sought to include in a collective action individuals whose roles differed from their own, see Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 943, 945 (W.D. Ark. 2003) (attempting to include all "salaried Wal-Mart employees, below officer-level"); Streeter-Dougan v. Kirkston Mortg. Lending, LLC, No. 3:13-cv-00166-RLY-WGH, 2013 WL 6174936, at *2 (S.D. Ind. Nov. 21, 2013) (attempting to include all "loan officers" where plaintiff was a "loan processor"), or individuals who worked at different locations, see Boyd v. Alutiiq Glob. Sols., No. 11-cv-0753, 2011 WL 3511085, at *4-6 (N.D. Ill. Aug. 8, 2011) (attempting to include individuals from various locations even though named plaintiffs all worked at one location). In each of those cases, the plaintiffs failed to

4

show that their proposed classes comprised similarly situated individuals. By contrast, plaintiff here seeks to include one type of worker from one location--exotic dancers at the Club--and has offered sufficient evidence to warrant conditional certification.

## II.

Defendants argue that even if plaintiff's individual FLSA claim can proceed,[1] the other dancers cannot join the action because they signed mutual arbitration agreements that bar them from doing so. It is well settled that "a court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action." *Bigger*, 947 F.3d at 1050. Notifying these individuals would be inefficient and could engender abuse of the collective action mechanism by ratcheting up pressure on defendants to settle. *See id.* at 1049. Accordingly, defendants must be given the opportunity to "show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Id.* at 1050 (citation omitted).

Defendants here were given that opportunity, *see* Dkt. No. 38, and have filed an "Offer of Proof" arguing for the exclusion of "each and every Entertainer" from this collective action based on

---

[1] Because I denied defendants' Rule 12(b)(3) motion to dismiss plaintiff's individual claim, Dkt. No. 38, their argument that plaintiff's individual claim is moot fails.

5

the purported existence of valid arbitration agreements signed by the dancers. Dkt. No. 39. In addition, defendants submitted eight agreements signed by various dancers--including the one signed by plaintiff--that they claim represent a "sampling" of the agreements signed by all the dancers. Exhs. 1-8, Dkt. Nos. 39-1 through 39-8.[2] Defendants also submitted a list identifying all the dancers they claim signed an arbitration agreement, Exh. 10, Dkt. No. 42,[3] and a declaration by manager Brian Cunningham, Exh. 9, Dkt. No. 41.

Putting aside the dancers who signed the agreements in Exhibits 1-8, defendants have not shown by a preponderance of the evidence that the dancers listed in Exhibit 10 signed valid arbitration agreements. Under *Bigger*, defendants must "show the existence and validity of an arbitration agreement for *each* employee it seeks to exclude from receiving notice" and I am not required to "simply take an employer at its word." 947 F.3d at 1050-51 (emphasis added). It is not enough to offer agreements

---

[2] Among the agreements submitted by defendants, there are two versions which, for simplicity, I will refer to as "Version 1" and "Version 2." There are the agreements signed by Isabel Sturla, Marie Ihouchy, Elvina Leonitova, and Caitlynn Kijowski ("Version 1"), Exhs. 1-4, and there are the remaining four agreements ("Version 2"), Exhs. 5-8.

[3] Even though defendants submitted this list late, I will consider it for purposes of the present motion because doing so does not affect the outcome.

signed by eight dancers and then to assure me, without additional evidence, that the same goes for over 150 other dancers.

Although defendants have shown the existence of the seven arbitration agreements in Exhibits 1-7,[4] plaintiff contends that these agreements are invalid because they contain unconscionable provisions.[5] It is true that "generally applicable contract defenses such as . . . unconscionability, may be applied to invalidate arbitration agreements." *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citations omitted). In assessing these defenses, "[a]n agreement to arbitrate is treated like any other contract," *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997) (citation omitted), and state contract law "determine[s] which contracts are binding under [Federal Arbitration Act] § 2," *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) (citations omitted). The agreements at

---

[4] Because I previously concluded that defendants waived their right to arbitrate claims brought by plaintiff, Dkt. No. 16 at 6, I need not consider the arbitration agreement that she signed, which defendants submitted with the other seven. *See* Exh. 8.

[5] Plaintiff also argues that, regardless of whether I find the arbitration provisions unconscionable, the dancers who signed Version 1 of the agreement did not agree to arbitrate claims against the Club's owners and managers, like defendant Odishoo. However, in Illinois, "[a] contract that gives a party a right to arbitration may extend that right to the party's agents, even when the agents did not sign the agreement." *Claus v. Lakeview Ins. Agency of Ill., Ltd.*, No. 1-11-1361, 2011 WL 10099278, at *3 (Ill. App. Ct. 2011). Therefore, this argument fails.

issue specify that Illinois law controls, *see, e.g.*, Exh. 1 ¶ 20; Exh. 5 ¶ 20, and the parties do not dispute this provision.

Plaintiff first argues that the forum selection clause in Version 1 of the agreement, which requires arbitration to take place in Colorado, is unconscionable. While the validity of a forum selection clause is typically analyzed under federal law, the Seventh Circuit has held that, "[i]n contracts containing a choice of law clause, . . . the law designated in the choice of law clause [is] used to determine the validity of the forum selection clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014) (citing *Abbott Lab'ys v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007); additional citation omitted). Here, as stated above, the agreements specify that Illinois law controls. Hence, Illinois law governs the forum selection clause's validity.

Under Illinois law, "[a] forum selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances." *IFC Credit Corp. v. Rieker Shoe Corp.*, 881 N.E.2d 382, 389 (Ill. App. Ct. 2007) (citation omitted). To determine the reasonableness of a forum selection clause, courts should consider:

> (1) the law that governs the formation and construction of the contract; (2) the residency of the parties; (3) the place of execution and/or performance of the contract; (4) the location of the parties and their witnesses; (5) the inconvenience to the parties of any

8

>particular location; and (6) whether the clause was equally bargained for.

*Id.* at 389-90 (citation omitted). Applying these factors reveals that the forum selection clause in Version 1 of the agreement is unreasonable under the circumstances.

The first, third, and sixth factors are straightforward and weigh in plaintiff's favor. The contract was executed and performed in Illinois and Illinois law governs the formation and construction of the contract, so the first and third factors suggest that Illinois, not Colorado, is the appropriate forum. The sixth factor favors plaintiff because the clause is "contained in boilerplate language,"[6] so it "indicates unequal bargaining power." *Id.* at 389 (citation omitted).

The remaining factors are neutral or arguably weigh against a finding of reasonableness as well. The parties' submissions do not reveal any connection between either party and the state of Colorado. Indeed, in their answer to the complaint, defendants admit that the Club is "an Illinois limited liability company with its principal place of business" in Illinois. Dkt. No. 44 ¶ 5. Thus, although the current residencies of defendant Odishoo and the four dancers who signed Version 1 of the agreement are unknown, the residency of defendant Club is Illinois, so the second factor

---

[6] Defendants effectively concede that the agreements are boilerplate by asserting that the eight agreements they submitted are representative of the agreements signed by all other dancers.

9

favors plaintiff. Similarly, as to the fourth factor, the Club is located in Illinois, so even though the locations of the dancers and the parties' witnesses are uncertain, this factor also weighs in plaintiff's favor. The fifth factor is neutral because the parties have not submitted evidence as to the current location of the dancers or the individuals who would represent the Club in an arbitration proceeding in Colorado. Nor has any evidence been submitted as to the inconvenience that traveling to Colorado may cause.

The forum selection clause in Version 1 of the agreement is therefore unreasonable. Consequently, defendants have not met their burden to show by a preponderance of the evidence "the validity of an arbitration agreement" for Isabel Sturla, Marie Ihouchy, Elvina Leonitova, and Caitlynn Kijowski, and these four dancers should not be excluded from receiving notice of this action. *Bigger*, 947 F.3d at 1050-51.

Plaintiff next takes aim at the provision in both versions of the agreement requiring that the parties equally split the costs of arbitration, claiming such an arrangement would be prohibitively expensive for the dancers. To prevail, plaintiff "must provide some individualized evidence" that the dancers "likely will face prohibitive costs in the arbitration at issue and that [they are] financially incapable of meeting those costs." *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir.

10

2003). Because plaintiff has not offered this evidence, I cannot find this provision unconscionable.

Finally, plaintiff maintains that the provision in both versions of the agreement allowing the prevailing party in arbitration to be awarded "costs incurred for the proceedings, including reasonable attorneys' fees," *see, e.g.*, Exh. 7 ¶ 21(E), is unconscionable because it impermissibly displaces the FLSA's fee-shifting scheme. However, the Seventh Circuit has held that whether an arbitration provision can alter cost- and fee-splitting rules specified in federal statutes is an issue for "the arbitrator rather than the court." *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004); *see also Pantel v. TMG of Ill., LLC*, No. 07 C 7252, 2008 WL 5516489, at *2-3 (N.D. Ill. Nov. 17, 2008).

Accordingly, the dancers who signed Version 2 of the agreement--Cynthia Bohannon, Jennifer Garcia, and Hannah Elliott --are excluded from receiving notice.[7]

---

[7] Nothing in this opinion should be understood to preclude these three dancers from challenging the validity of their agreements and offering the evidence that I found lacking here in future proceedings. Nor does anything in this opinion prevent other dancers who opt in to this FLSA action from challenging the validity of their agreements later in this litigation, should defendants attempt to have them dismissed.

III.

Defendants raise three objections to plaintiff's proposed notice. *See* Dkt. No. 17-1. First, defendants argue that the notice should be amended to "inform potential opt-ins if there are circumstances under which they may have to bear costs or pay fees to Plaintiff's counsel." Dkt. No. 26 at 9–10. Several courts have found similar language inappropriate because it has the capacity to "unreasonably chill participation in" a FLSA action. *King v. ITT Cont'l Baking Co.*, No. 84 C 3410, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986); *see also Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898, 901 (N.D. Ill. 2020). I agree, and therefore decline to include the language proposed by defendants.

Nor am I convinced by defendants' objection to plaintiff's request for production of potential plaintiffs' last-known email addresses and phone numbers, and authorization of notice via email and text message. In defendants' view, physical mail notice is enough. However, email notice in FLSA actions is now "the norm." *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 880 (N.D. Ill. 2017) (collecting cases). Authorization of notice by text message is increasingly common, particularly where potential plaintiffs are transitory, which plaintiff claims in her affidavit is the case here. *See Brashier v. Quincy Prop., LLC*, No. 3:17-CV-3022, 2018 WL 1934069, at *6–7 (C.D. Ill. Apr. 24, 2018). Defendants

contend that notice by email and text message would be unnecessarily intrusive and unwarranted. But "any moderate intrusion caused by such a text message [or email] is outweighed by the interest in apprising all potential class members of this action." *Dennis*, 438 F. Supp. 3d at 902.

Defendants also object to the sending of a reminder notice after the initial notice. However, reminder notices are regularly authorized because they further "[t]he purpose of a step-one notice," which is "to inform potential class members of their rights." *Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 964 (S.D. Ind. 2016); *see also Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1140 (N.D. Ill. 2017); *Boltinghouse v. Abbott Lab'ys, Inc.*, 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016). Defendants claim that potential plaintiffs could interpret a reminder notice as encouragement by the court to join the action. But allowing a single deadline reminder does not expose the court to "the appearance of endorsing the action's merits," *Bigger*, 947 F.3d at 1049, especially where, as here, the notice makes clear that the court has not taken a position on the action's merits. *See Black v. P.F. Chang's China Bistro, Inc.*, No. 16-cv-3958, 2017 WL 2080408, at *12 (N.D. Ill. May 15, 2017) (approving reminder notice where defendant argued it was "unnecessary" and might be seen as improper "encouragement" by the court because "the notice disclaims that the [c]ourt has taken a position on the case's merits"); *Knox*, 208 F. Supp. 3d at 964–

13

65 ("Deadline reminders are commonplace and will not appear to endorse the merits of the case."). Accordingly, I will authorize a reminder notice to be sent in this case.

I approve of the remainder of the proposed notice, which I find reasonable and to which defendants do not object. *See Kelly v. Bank of Am., N.A.*, No. 10 C 5332, 2011 WL 7718421, at *1 (N.D. Ill. Sept. 23, 2011) ("Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." (citation omitted)).

IV.

Finally, plaintiff requests that I toll the statute of limitations for the claims of potential opt-in plaintiffs from the filing of the motion on August 12, 2021, Dkt. No. 17, until the date notice is issued. Equitable tolling may be appropriate if (1) the party has diligently pursued his or her rights and (2) some extraordinary circumstance stood in the way and prevented timely filing. *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013). There is no reason to infer a lack of diligence on the part of plaintiff or any of the potential plaintiffs. Additionally, several courts have found that the time it takes for a court to rule on a motion for conditional certification of a FLSA collective action can constitute an "extraordinary circumstance." *See, e.g., Bergman v.*

14

*Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860–61 (N.D. Ill. 2013). I accordingly toll the statute of limitations as requested.

V.

For the foregoing reasons, I grant plaintiff's motion in part as follows:

1. I conditionally certify a collective action by plaintiff and similarly situated individuals pursuant to 29 U.S.C. § 216(b), and equitably toll the statute of limitations for the claims of putative opt-in plaintiffs from the date that plaintiff filed her motion for conditional certification until the date notice is issued. The class is defined as: All individuals who have worked as exotic dancers for the Gold Room in Stone Park, Illinois, between three years prior to the filing of the motion for conditional certification and the entry of judgment in this case.
2. I approve plaintiff's proposed notice, Dkt. No. 17-1, and the requested 90-day opt-in period.
3. Within twenty-one days of this order, defendant Club shall provide to plaintiff's counsel in a computer-readable file the following information regarding all potential class members: full name; last known address(es) with city, state, and zip code; last known email address(es) (non-company address if applicable); last known mobile telephone

    number(s); beginning date(s) of employment; and ending date(s) of employment (if applicable).

4. Plaintiff is authorized to send the approved notice by first-class U.S. Mail, email, and text message to all potential members of the approved collective action to inform them of their right to opt in to this lawsuit. Plaintiff may also send a reminder notice halfway through the opt-in period. Plaintiff may not send any notice to the three dancers identified in the opinion above.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 1, 2022