IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Brandi Campbell, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 20 C 5321 |
| Marshall International, LLC d/b/a Gold Club Chicago a/k/a the Gold Room, and Pera M. Odishoo, | ) ) ) ) ) ) | |
| Defendants. | ) | |

<u>Memorandum Opinion and Order</u>

Plaintiff Brandi Campbell worked as an exotic dancer for defendant Marshall International, LLC, which does business as Gold Club Chicago, also known as the Gold Room (the "Club"). She sued the Club and its owner and manager, Pera M. Odishoo, on behalf of herself and other dancers, claiming violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.* I previously conditionally certified a collective action under the FLSA, but final certification has not yet been granted, nor has any motion for class certification for

the IMWL or IWPCA claims yet been filed. More than 90 other dancers have opted into the conditionally certified FLSA action. *See* ECF 58-1, 59-1, 60-1, 61-1, 63-1, 67-1, 70-1, 74-1.

Before me now are two motions. First, a motion by plaintiff to dismiss defendants' counterclaims for breach of contract and specific performance. Second, a motion by defendants to exclude Brandi Campbell as class representative. For the reasons given below, the motion to dismiss the counterclaims is granted and the motion to exclude is denied.

I.

Defendants' counterclaims for breach of contract and specific performance are both premised on alleged violation of several provisions of an "Entertainment Lease" signed by plaintiff and the opt-in dancers, an example of which--signed by Brandi Campbell--accompanies defendants' counterclaim. ECF 103-1. Included among these provisions are several that purport to characterize the business relationship between the dancers (or "Entertainers") and the Club and provide for consequences should a dancer later dispute that characterization:

> **12. Business Relationship of Parties.**
>
> **A.** Entertainer acknowledges that the Club has offered to hire her as an employee, but that she has REJECTED that offer and desires, instead, to perform as an Independent Professional Entertainer under the terms of this Lease.
>
> . . .

2

> **C.** The Club and Entertainer acknowledge that if the relationship between them was that of employer and employee, the Club would be required to collect, and would retain, all Entertainment Fees paid by customers to Entertainer . . . .
>
> . . .
>
> **E.** If at any time Entertainer believes that-- irrespective of the terms of this Lease--she is being treated as an employee by the Club or that her relationship with the Club is truly that of an employee, Entertainer shall immediately . . . : i) provide notice to the Club <u>in writing</u> of her demand to be fully treated as an employee consistent with the terms of subparagraph 12(C) and applicable law; and ii) begin reporting all of her tip income to the Club on a daily basis . . . .
>
> . . .
>
> **G.** If at any time Entertainer contends that she should not be bound by the terms of this Lease and that she is or was entitled to the payment of wages during any period of time that she performed at the Club, Entertainer shall contemporaneously with making such a demand provide to the Club a signed and legally compliant statement of all tip income earned by her during the time she claims to have been entitled to the payment of wages.
>
> 17. <u>**Material Breach by Entertainer**</u>. Entertainer materially breaches this Lease by . . . claiming the business relationship with the Club as being other than that of a leasing arrangement.

*Id.* ¶¶ 12, 17. Defendants also claim that, by bringing this suit, plaintiff and the opt-in dancers have violated the arbitration provision of the agreement. *Id.* ¶ 21. Finally, defendants assert breach of a provision requiring dancers to "[m]aintain accurate

3

daily records of all income, including tips, earned while performing on the Premises . . . ." *Id.* ¶ 5(D).

Exposing workers to countersuits simply for challenging their employment status would amount to an abridgement of rights conferred by the FLSA, and would unreasonably chill such challenges. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." (citations and internal quotation marks omitted)). Accordingly, defendants' counterclaims cannot be premised on violation of those provisions of the lease agreement purporting to define the relationship between the Club and the dancers-- including paragraphs 12 and 17 of the example agreement.[1] *See De Angelis v. Nat'l Ent. Grp.*, No. 2:17-cv-924, 2018 WL 4334553, at *4-5 (S.D. Ohio Sept. 11, 2018) (dismissing breach of contract counterclaim in materially similar context); *Shaw v. Set Enters., Inc.*, 241 F. Supp. 3d 1318, 1328-30 (S.D. Fla. 2017) (same); *see also Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740-41 (5th Cir. 2010) ("Generally speaking, courts have been hesitant to permit an

---

[1] I need not conduct a separate analysis on whether defendants' claims are also impermissible under the IMWL and IWPCA. Because allowing defendants to sue plaintiff and the opt-ins based on the above-cited provisions would contravene FLSA rights, defendants cannot maintain their claims based on these provisions at all.

4

employer to file counterclaims in FLSA suits for money the employer claims the employee owes it . . . ." (footnote and citations omitted)). If plaintiff and the opt-in dancers are found to be employees, then their right to wages is governed by statute and case law, not by the signed agreements.

Defendants also allege that, by bringing this suit, plaintiff and the opt-ins breached the agreement provision requiring arbitration of disputes, including a waiver of class and collective actions. As to Campbell, I have already concluded that defendants have waived their right to arbitrate. *See* ECF 16 at 6. Plaintiff urges me to find that defendants have waived arbitration as to the opt-in dancers, too. I need not decide whether they have done so, however, because I expressly permitted the opt-in dancers to join the conditionally certified FLSA collective action after defendants failed to demonstrate the existence of valid arbitration agreements as to those dancers. *See* ECF 51. It is therefore implausible that, as things stand, they have breached any arbitration provision by joining the action. Furthermore, defendants attach only an agreement signed by Campbell to their counterclaim. But as was seen from the agreements submitted by defendants at the FLSA conditional certification stage, the contents of the arbitration provisions varies among the agreements signed by different dancers. Indeed, I found some of those arbitration provisions unconscionable and invalid. Thus, I cannot

5

plausibly infer that any of the opt-in dancers signed an agreement containing a valid arbitration provision.

The final allegedly breached provision is the one requiring dancers to "[m]aintain accurate daily records of all income, including tips, earned while performing on the Premises." ECF 103-1 ¶ 5(D). Even if the dancers breached this provision by failing to maintain such records, defendants have failed to plausibly allege one of the key elements of a breach of contract claim: harm. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018) (applying Illinois law). As plaintiff points out, if as part of this suit the dancers are found to be independent contractors, then it will not matter whether they kept tip records (or, if it will matter, defendants' counterclaim does not make clear how). Breach of this provision could only result in harm if the provisions relating to dancers' obligation to repay earned tips and fees to defendants in the event they are found to be employees (or in the event they challenge their employment status) are also breached. Having found that those other provisions cannot form the basis of a counterclaim here, breach of paragraph 5(D) alone does not harm defendants.

II.

Defendants move to exclude Brandi Campbell as class representative, arguing that she inadequately represents the

interests of the class under Federal Rule of Civil Procedure 23.[2] According to defendants, Campbell is subject to three unique defenses that will impair her ability to represent other class members not subject to those defenses. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("A named plaintiff . . . who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." (citations omitted)). First, defendants say Campbell was correctly paid in compliance with minimum wage laws. Setting aside the potentially self-defeating implications of defendants' argument--namely conceding the other dancers' pay was

---

[2] Plaintiff argues that defendant should not be allowed to bring such a motion until she has moved for class certification. I opt to resolve the motion on the merits.

While plaintiff's IMWL and IWPCA claims are brought on behalf of a putative class, which is governed by Rule 23, plaintiff's FLSA claim is brought as a collective action under 29 U.S.C. § 216(b). Defendants only frame their motion in terms of adequacy of a representative in a class action under Rule 23, not a collective action under the FLSA. Defendants do not discuss whether Rule 23's standards about representative adequacy apply in the FLSA context, and there is some authority suggesting those standards do not apply. *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (observing that district courts have discretion over how to manage FLSA collective actions and that the Seventh Circuit has not articulated a standard); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 438 (S.D. Ind. 2012) ("Rule 23 and its standards governing class certification do not apply to a collective action brought under the FLSA." (citing *Moss v. Putnam County Hosp.*, No. 2:10-cv-00028-JMS-WGH, 2010 WL 2985301, at *1 (S.D. Ind. July 21, 2010))). Accordingly, my analysis centers on whether Campbell is an adequate class representative for the IMWL and IWPCA claims under Rule 23.

not consistent with wage laws--defendants cite no evidence in their opening brief from which I could conclude that Campbell may be uniquely subject to this defense. Aside from bald assertions, there is nothing to suggest that Campbell was correctly paid and nothing to suggest that other putative class members were not. Even were I to consider the evidence defendants marshal for the first time in their reply brief, which comprises Campbell's deposition testimony suggesting she did not keep written records of her hours worked or tip income received, defendants fail to persuade me that Campbell lacks some other evidence from which she could carry her evidentiary burdens under each statute.

The second defense to which Campbell is allegedly uniquely exposed is that "Campbell did not work past 2018 and does not have the right to compensation pursuant to any wage law past 2018." Mot., ECF 99 at 3. It is unclear to me how this affects Campbell's adequacy as a class representative, and defendants offer no further explanation on the point. So, I reject that argument.

Third, defendants argue that the arbitration provision, which includes a class action waiver, means that she cannot adequately represent the class because the provision could mean that she has waived her ability to bring a class claim. But I have already concluded that defendants waived that provision as to Campbell. *See* ECF 16. Apparently recognizing this after plaintiff pointed it

8

out in her response, defendants abandon this argument in their reply brief.[3]

Defendants also argue that Campbell's claims are atypical when compared to the claims of other dancers. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014) ("A person whose claim is idiosyncratic or possibly unique is an unsuitable class representative." (citations omitted)). But the aspects of Campbell's claims to which they point do not render her an inadequate class representative. For example, defendants state that "Campbell signed multiple entertainment leases whereas many of the opt-ins signed fewer leases." Mot., ECF 99 at 4. They do not elaborate on how this affects Campbell's representation of the class, nor do I perceive any such effects. Further, they contend that, because of when Campbell worked at the Club, she was one of the only dancers in the putative class who experienced Odishoo's management, rather than the management of Brian Cunningham. Even if that were true--which plaintiff disputes--defendants again fail to spell out what bearing it would have on Campbell's ability to represent the class; they simply point out a potential difference that may or may not be legally relevant.

---

[3] They abandon it at least insofar as it is framed as a unique defense which Campbell would need to overcome. They pursue a similar argument in the context of whether Campbell's claims are atypical, which I address below.

Finally, defendants argue once again that the arbitration provision creates a problem for Campbell acting as class representative. In their motion, they argue that "Campbell is an improper representative because she signed a provision that committed her to arbitrating any claims and waived her right to file any class action claims," and that she therefore cannot adequately represent the interests "of the plaintiffs that are not bound by that waiver." Mot., ECF 99 at 4-5. As above, the argument as framed fails because Campbell is, in fact, not bound by the arbitration provision; defendants waived that provision. Perhaps recognizing the problem with their argument, defendants flip it on its head in their reply brief: no longer is the problem that Campbell is subject to an arbitration provision; the problem is that she is *not* subject to that provision while other dancers might be. Whether other dancers will opt to proceed by arbitration or be required to do so, however, does not affect Campbell's ability to represent the dancers who wish and are allowed to be part of a class. Indeed, if some dancers are not included in the class by virtue of an arbitration provision, then their interests are irrelevant to the class. Accordingly, they do not weigh on Campbell's adequacy as a class representative.

### III.

Having resolved the motions for the reasons explained above, I decline to address other arguments put forth by the parties at

this time. Plaintiff's motion to dismiss the counterclaims is granted. Defendants' motion to exclude Campbell as class representative is denied.

**ENTER ORDER:**

*[signature]*
**Elaine E. Bucklo**
United States District Judge

Dated: October 13, 2023